MERRITT, VICKERS, INC., a/k/a M. J. Merritt & Co., Inc. and Matthew J. Merritt, Jr. and James S. Vickers, Petitioners,

v.

SECURITIES AND EXCHANGE COMMISSION, Respondent.

No. 71, Docket 29283.

United States Court of Appeals Second Circuit.

Argued Oct. 21, 1965.

Decided Dec. 3, 1965.

---

**294**

Matthew J. Merritt, Jr., pro se.

Meyer Eisenberg, Sp. Counsel, Securities & Exchange Commission (Phillip A.

Loomis, Jr., Gen. Counsel, Walter P. North, Associate Gen. Counsel, Paul J. Kemp, Atty., Securities & Exchange Commission, on the brief), for respondent.

Before WATERMAN, MOORE and FRIENDLY, Circuit Judges.

MOORE, Circuit Judge:

In 1962, the National Association of Security Dealers' (NASD) District Business Conduct Committee of District No. 12 found that Merritt, Vickers, Inc.,[1] a registered broker-dealer, had executed 120 retail sales of securities as principal between February 8, 1960, and October 10, 1960, at unfair prices not reasonably related to current market prices in violation of Sections 1 and 4 of Art. III of the NASD Rules of Fair Procedure,[2] as interpreted by its mark-up policy.[3] The prices computed by the NASD ranged from 10.5% to 125% over prevailing market prices. In 47 of the transactions, the mark-ups were computed on the basis of the price paid by Merritt, Vickers, Inc. in same-day purchases and averaged 40.5%. The mark-ups in the remaining 73 transactions, which were effected on days when Merritt, Vickers, Inc. did not make any purchases of the securities sold, were computed on the basis of ask quotations published in the quotation sheets of the National Daily Quotations Bureau (sheets), which the NASD considered representative of the market price. The mark-ups in these transac-

1. The firm is also known as M. J. Merritt & Co.

2. § 1 of Article III of the NASD Rules of Fair Practice provides that:
"A member, in the conduct of his business, shall observe high standards of commercial honor and just and equitable principles of trade." The NASD has interpreted this to prohibit any member from entering "into any transaction with a customer in any security at any price not reasonably related to the current market price of the security." NASD Manual, G-3.

3. § 4 of Article III of the NASD Rules of Fair Practice provides in relevant part that "In 'over-the-counter' transactions,

whether in 'listed' or 'unlisted' securities, if a member buys for his own account from his customer, or sells for his own account to his customer, he shall buy or sell at a price which is fair, taking into consideration all relevant circumstances, including market conditions with respect to such security at the time of the transaction, the expense involved, and the fact that he is entitled to a profit
* * *"

A mark-up of 5% or less over the current market is considered fair. The history and rationale of the 5% policy is set forth in NASD Manual, G-1 to G-6. See also National Association of Security Dealers, Inc., 17 S.E.C. 459 (1944) wherein the SEC appraises the policy.

tions ranged from 12.5% to 113% and averaged 30.1%. In addition, the NASD found that Merritt, Vickers, Inc. (a) violated Section 1 of Article III by improperly extending credit in 72 transactions effected between July 10, 1959, and August 11, 1960, in violation of Regulation T of the Board of Governors of the Federal Reserve System;[4] (b) violated Sections 1 and 21[5] of Article III by failing to maintain its books and records in conformity with SEC requirements set forth in 17 C.F.R. § 240.17a–3 and (c) violated Sections 1 and 12[6] by failing to disclose to customers on two occasions where it acted as agent for both the sellers and buyers of the same securities its dual agency role and the double commission it received.

The NASD expelled Merritt, Vickers, Inc. from membership, found that Merritt and Vickers as officers were responsible for the above violations, and revoked their registration as registered representatives of Merritt, Vickers, Inc. These findings and penalties were upheld by the Board of Governors of the NASD after a hearing.

Pursuant to Section 15A(g) of the Securities Exchange Act of 1934 (the Act)

15 U.S.C. 78o–3(g), Merritt, Vickers, Inc. and Merritt and Vickers applied to the SEC for review of the NASD action and in their application requested permission to adduce before the SEC additional evidence, consisting of books and records of other broker-dealers showing prices charged by such broker-dealers for securities which allegedly Merritt, Vickers, Inc. had over-priced. The request was denied on the ground that they had failed to comply with 17 C.F.R. § 240.15ag–1 (e), which permits introduction of additional evidence upon a showing that it is material and that there were reasonable grounds for failure to adduce such evidence in hearings before the NASD. On review, Merritt, Vickers, Inc. challenged the NASD mark-up computations, alleging (1) that reliance by the NASD on a member's costs resulted in equating mark-ups to profits on the transactions contrary to an NASD regulation stating that the amount of profit attributable to market appreciation should not ordinarily enter into a determination of a mark-up's fairness,[7] and (2) that ask quotations were not a proper basis for computing mark-ups. The SEC concluded[8] that it was proper for the NASD to utilize a

4. § 4(c) (2) of Regulation T of the Board of Governors of the Federal Reserve System provides that:

"In case a customer purchases a security (other than an exempted security) in the special cash account and does not make full cash payment for the security within 7 days after the date on which the security is so purchased, the creditor shall, except as provided in the succeeding subdivisions of this section 4(c), promptly cancel or otherwise liquidate the transaction or the unsettled portion thereof."

5. § 21 of Article III of the NASD Rules of Fair Practice provides that:

"A member shall keep and preserve books, accounts, records, memoranda, and correspondence in conformity with all applicable Federal and State laws and all rules and regulations promulgated thereunder."

6. § 12 of Article III of NASD Rules of Fair Practice provides that

"A member at or before the completion of each transaction with a customer shall

give or send to such customer written notification disclosing (1) whether such member is acting as a broker for such customer, as a dealer for his own account, as a broker for some other person, or as a broker for both such customer and some other person; and (2) in any case in which such member is acting as a broker for such customer or for both such customer and some other person, either the name of the person from whom the security was purchased or to whom it was sold for such customer and the date and time when such transaction took place or the fact that such information will be furnished upon the request of such customer, and the source and amount of any commission or other remuneration received or to be received by such member in connection with the transaction."

7. See NASD Manual at G-5.

8. The SEC opinion is reported in Merritt, Vickers, Inc., Matthew J. Merritt & James S. Vickers, Securities Exchange Act Release No. 7409 (Sept. 2, 1964).

member's contemporaneous cost to compute mark-ups in retail transactions;[9] that, in the absence of such data, reliance could be placed on quotations in the sheets as reflective of current market price; and, that the NASD did not unfairly select quotations used in its computations. In addition, it sustained the findings of additional violations of NASD rules. With respect to the failure to comply with SEC records requirements, Merritt, Vickers, Inc. conceded that it failed to post its general ledger from June 1st to September 14th, 1960, but denied the existence of any other deficiences. However, the SEC, crediting the uncontradicted testimony of the NASD examiner, found that Merritt, Vickers, Inc. had failed to record or identify as such cancellations of various customers' transactions; had failed to post its security position record; and had failed to keep adequate monthly trial balances. With respect to Regulation T, the SEC noted that the record showed that Merritt, Vickers, Inc. had not received payment in 62 transactions and had not cancelled accounts in 10 transactions within the seven-day period permitted. Additionally, although acknowledging that the customers involved in the dual agency transactions may have had actual knowledge of Merritt, Vickers, Inc.'s role and the double commissions, the SEC pointed out that Section 12 of Article III of the NASD rules requires that notice appear in the written confirmation of each transaction and that the documents in evidence contained no such written disclosure. Finally, the SEC concluded that the penalties imposed on Merritt, Vickers, Inc. and on Merritt

and Vickers were not excessive in view of the numerous violations committed by the broker-dealer and the experience of Merritt and Vickers in the securities business.

■■ Merritt, Vickers, Inc. and Merritt and Vickers (petitioners) seek review of the SEC order pursuant to Section 25(a) of the Act, 15 U.S.C. 78y(a), and urge at the outset that it was improper to rely on the ask quotations in the sheets in computing mark-ups.[10] Generally, the petitioners allege that sheet quotations are not representative of current market prices since they do not constitute unconditional offers to buy or sell securities at the indicated price and, thus, fail to reflect changes in the market between the time the quotes are supplied and the transactions occur. In addition, it is claimed that the NASD should not be permitted to rely on sheet quotations in assessing the fairness of mark-ups unless it assumes the burden of showing that no special circumstances justified the mark-ups. This court is in agreement with the SEC that, although the quotations in the sheets are not firm offers for a fixed number of securities, and final prices are subject to change, they constitute sufficient proof of prevailing market prices "in the absence of evidence to the contrary." Charles Hughes & Co. v. SEC, 139 F.2d 434, 438 (2d Cir. 1943), cert. denied, 321 U.S. 786, 64 S.Ct. 781, 88 L.Ed. 1077 (1944); see Weber v. SEC, 222 F.2d 822 (2d Cir. 1955); General Investing Corp., Securities Exchange Act Release No. 7316 (May 15, 1964); Midland Securities, Inc., 40 S.E.C. 333, 337 (1960); Managed Investment Programs, 37 S.E.C. 783, 786–87

9. Reliance on same-day costs has been approved by the NASD, see NASD Manual at G-3; the SEC, see Naftalin & Co., Securities Exchange Act Release No. 7220 (Jan. 10, 1964); and various courts, see, e.g., Samuel B. Franklin & Co. v. SEC, 290 F.2d 719 (9th Cir.), cert. denied, 368 U.S. 889, 82 S.Ct. 142, 7 L.Ed.2d 88 (1961).

The SEC concluded that Merritt, Vickers, Inc.'s allegation that the mark-ups calculated on the basis of contemporaneous costs reflected actual dollar profit on

the transactions was without merit. It pointed out that the amounts used represented the difference between the price charged a customer and the per share cost, not the actual profit realized on particular securities sold, i. e., the net income on each sale.

10. Petitioners also repeated the contention made before the SEC that the mark-ups reflected dollar profit. It has no merit and does not require discussion. See note 9 supra.

(1957); Mitchell Securities Inc., 37 S.E.C. 178, 182 (1956); II Loss, Securities Regulation, at 1280 & n. 9 (1961 ed.). Thus, quotations in the sheets are treated as prima facie evidence of current market prices and the burden is on the broker-dealer to come forward with evidence of special circumstances to justify excessive mark-ups. The quotations relied on by the SEC and NASD here were supplied by dealers on the same day that Merritt, Vickers, Inc.'s transactions occurred and no attempt was made to adduce evidence in the NASD hearings to show that the dealer's quotations were not bona fide or were in fact at variance with prevailing prices.

■ The first indication that petitioners desired to present evidence to challenge the reliability of the quotations was in their application for review before the SEC. Petitioners contend that the SEC's refusal to receive the evidence was arbitrary and that this court should order the SEC to take additional evidence on the computation issue. The request is denied since we find that the SEC action was justified and did not constitute an abuse of discretion.

■ The SEC is authorized to grant leave to adduce additional evidence where it is shown that the evidence is material and reasonable grounds exist for failure to present the evidence at hearings before the NASD. Rule 15ag–1(e), 17 C.F.R. 240.15ag–1(e). The considerations underlying this rule were set forth by the SEC in Herrick, Waddell & Co., 23 S.E.C. 301 (1946), where it stated that it is generally desirable to present

> "all evidence before the Association [NASD] at the original hearing prior to review before the Commission. The experience of our judicial system has demonstrated that, to the extent that review is limited to the record before the lower tribunal, there is more complete preparation

by the parties, a clearer delineation of issues, and substantial simplification in the task of review. Moreover, fairness to the original tribunal requires that it be given the opportunity to consider all available evidence in making its decision."

Id. at 303. See Gerald M. Greenberg, 39 S.E.C. 601 (1959) and generally II Loss, Securities Regulation at 1374–80 (1961 ed.). Petitioners concede that they did not request production of broker-dealers' books and records or suggest that such evidence was material to their cause either before the NASD District Committee or the Board of Governors. However, it is asserted that such inaction was justifiable because a request would have been futile in view of the NASD's lack of power to subpoena documents. This is not persuasive. The SEC has held that the NASD's inability to subpoena documents does not itself justify the SEC's taking additional evidence or excuse a failure to attempt to produce all relevant evidence in proceedings before the NASD. See Richard A. Holman, 40 S.E.C. 870 (1961). While broker-dealers in general may be reluctant to voluntarily permit inspection of their books and records due to the possibility of provoking a NASD investigation or revealing confidential information to competitors, there is nothing in the record to demonstrate that process would have been required to obtain the desired information. Mere speculation cannot serve as an excuse for failure to produce relevant evidence before the NASD.

In sum, the SEC refusal to permit the introduction of the broker-dealer records was warranted in view of the petitioners' failure to alert the NASD to their existence or materiality. Due to the similarity in the standards governing the SEC and this court with respect to the propriety of permitting the introduction of additional evidence,[11] we consider the rea-

---

11. Both the SEC and this court are authorized to permit additional evidence to be presented upon a showing that it is material and that reasonable grounds exist for failure to present in proceed-

ings below, i.e., either before the NASD or the SEC. Compare 17 C.F.R. § 240.-15ag–1(e) with 15 U.S.C. § 78y(a).

Petitioners in their reply brief assert that they unsuccessfully attempted to pro-

sons for upholding the SEC's rejection of petitioners' application equally persuasive reasons for denying their request for an order compelling the SEC to hear further evidence on the computation issue.

■ With respect to the other violations of NASD rules, we affirm the findings below on the strength of the SEC opinion which amply demonstrates that they are supported by substantial record evidence.

■ Petitioners' final contention is that the penalties imposed, i. e., expulsion of Merritt, Vickers, Inc. and revocation of Merritt's and Vickers' registration as registered representatives, were excessive and inconsistent with decisions imposing lesser sanctions for allegedly similar offenses. The question of whether NASD disciplinary action is excessive is determined by the SEC, pursuant to 15 U.S.C. § 78o–3(h), upon examination of the facts of each case with due regard to the public interest involved. Despite Merritt's and Vickers' allegations that they did not participate in Merritt, Vickers, Inc.'s business in a managerial capacity, and the fact that Merritt was engaged only part-time in the securities business, the SEC concluded that Merritt and Vickers were responsible for the numerous violations committed by Merritt, Vickers, Inc. and were experienced in the securities business. Merritt and Vickers were the principal stockholders (each owned between 40% to 45% of its stock) and officers of the member.

Moreover, Merritt testified that both were active operating heads of the firm. Merritt's experience consisted of working as a salesman and trader for three years prior to the organization of Merritt, Vickers, Inc. in 1959, while Vickers had worked as a salesman and principal in other securities firms for nine years prior to 1959. In addition, the SEC noted that both were employed as salesmen for Vickers Bros., a firm entirely separate from Merritt, Vickers, Inc., in April, 1959, when the SEC revoked its broker-dealer registration. The substantial association of Merritt and Vickers with the securities business, coupled with their responsibility for the serious violations of NASD rules committed by Merritt, Vickers, Inc., led the SEC to reject the claim that the penalties were excessive. Moreover, contrary to petitioners' allegations,[12] the penalties imposed were comparable to those imposed for similar violations. See Gerald M. Greenberg, 40 S.E.C. 133 (1960) (expulsion of member and representative for selling at unfair prices; unsuitable recommendations to customers; and violation of Regulation T); Midland Securities Inc., 40 S.E.C. 333 (1960) (expulsion of member and representative for selling at unfair prices and failing to maintain records). Upon the record, "we cannot say that the Commission exceeded its discretion in upholding the NASD's assessment." Nassau Securities Service v. SEC, 348 F.2d 133, 136 (2d Cir. 1965).

Affirmed.

cure other broker-dealers' books and records. However, no evidence is presented to support this contention and, in any event, no such claim was made before either the SEC or NASD. Thus, it has no bearing on our decision.

12. Naftalin & Co., Securities Exchange Act Release No. 7220 (Jan. 10, 1964) referred to by petitioners as inconsistent with the present case is inapposite. The

SEC reduced NASD expulsion of a member and revocation of its representative's registration imposed for offenses similar to those in the present case to 20 days in each instance on the grounds that the offenses had occurred in the first few months of the member's existence; that the problems were corrected immediately upon notice; and that restitution was promptly made to customers.