**F.B. HORNER & ASSOCIATES, INC., Fred B. Horner, Petitioners,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

No. 1329, Docket 92–4131.

United States Court of Appeals, Second Circuit.

Argued May 18, 1993.

Decided May 19, 1993.

Steven Kamerman, New York City, for petitioners.

Susan S. McDonald, S.E.C., Washington, DC (Eric Summergrad, Paul Gonson, Jacob H. Stillman, S.E.C., Washington, DC, of counsel), for respondent.

Before: VAN GRAAFEILAND and WINTER, Circuit Judges, and SPRIZZO, District Judge.[*]

PER CURIAM:

F.B. Horner & Associates, Inc. ("FBH"), a former securities firm and National Association of Securities Dealers ("NASD") member, and Fred B. Horner, FBH's President, petition for review of an Order of the Securities and Exchange Commission ("SEC") affirming NASD's disciplinary action fining and censuring them for twice charging excessive price markups in violation of NASD's Rules of Fair Practice. We deny the petition and lift the stay.

On September 9, 1988, FBH sold a client two lots of zero coupon collateralized mortgage obligation bonds. Acting as a principal, FBH had purchased the bonds and then added markups of 8.09 and 6.91 percent to the bond prices. An investigation ensued because these markups were well in excess of the average markup for similar fixed income instruments. Moreover, the markups surpassed the NASD's 5 percent markup policy.

A District Business Conduct Committee, the NASD Board of Governors, and the SEC all agreed that petitioners' markup on the bonds violated Sections 1 and 4 of Article III of the NASD's Rules of Fair Practice.[1] The NASD Board of Governors and the SEC agreed that petitioners should be censured and jointly and severally fined. The fine

---

[*] The Honorable John E. Sprizzo, United States District Judge for the Southern District of New York, sitting by designation.

1. Section 1 states that "[a] member, in the conduct of his business, shall observe high standards of commercial honor and just and equitable principles of trade."

Section 4 states that, "[i]n 'over-the-counter' transactions, whether in 'listed' or 'unlisted' securities, if a member buys for his own account from his customer, or sells for his own account to his customer, he shall buy or sell at a price which is fair, taking into consideration all rele-vant circumstances, including market conditions with respect to such security at the time of the transaction, the expense involved, and the fact that he is entitled to a profit; and if he acts as agent for his customer in any such transaction, he shall not charge his customer more than a fair commission or service charge, taking into consideration all relevant circumstances including market conditions with respect to such security at the time of the transaction, the expense of executing the order and the value of any service he may have rendered by reason of his experience in and knowledge of such security and the market therefor."

imposed was the amount of the markups in excess of 5 percent plus $5,000 per transaction, an amount totalling $99,201.20.

■ Petitioners argue that the SEC failed to consider all relevant circumstances, as required by Section 4, when it determined that the markups were excessive. In particular, they suggest that the SEC did not consider FBH's right to make a profit and the various services, including portfolio analyses, provided to the client. We disagree.

The SEC considered petitioners' services to the client and, largely because of those services and the client's satisfaction, held that 5 percent markups on the transactions were permissible. A 5 percent markup on this type of fixed income instrument is quite generous, considering the evidence that an average markup on similar instruments is 1.8 to 2.9 percent for dealers like FBH who bear no risk on the bonds and that similar services are often offered for significantly lower markups. The petitioners' contention that the SEC failed to consider their profit is also meritless. A 5 percent markup yields FBH a profit of more than $100,000. The facts that FBH sometimes lost money on other transactions for the same clients or that some of its markups paid the firm's costs in other transactions does not justify an excessive markup in any one transaction.

■ Petitioners also question some of the well-established principles underlying NASD's rules concerning the markup system. First, they argue that markups on individual transactions are irrelevant; instead, they suggest that average markups per customer should be examined. This suggestion would result in an administratively cumbersome and unworkable rule and is not consistent with well-established law. *See, e.g., In re W.N. Whelen & Co., Inc.,* 46 SEC Dkt. 1541 (1990), 1990 WL 312067, *3.

■ Petitioners also suggest that the contemporaneous cost of acquiring the bonds should not be the gauge for ascertaining a dealer's market price from which the amount of the markup is determined. Instead, petitioners claim that the price at which the securities are sold to the client is a better indication of market price (making the mark-up zero). As the SEC notes in its brief, this position is "tautolog[ical]" because it would deem all prices fair regardless of the percentage markup. In any event, this position flies in the face of caselaw. *Barnett v. United States,* 319 F.2d 340, 344 (8th Cir.1963); *cf. Merritt, Vickers v. SEC,* 353 F.2d 293, 294–95 (2d Cir.1965).

■ Petitioners next contend that both the $99,201.20 fine imposed and Horner's joint and several liability for that fine were abuses of discretion. We disagree. The SEC did not abuse its discretion in affirming a fine comprised of the profit over the 5 percent markups plus $5,000 per transaction. *Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1457–58, 36 L.Ed.2d 142 (1973). In addition, the SEC did not abuse its discretion in affirming Horner's joint and several liability considering that he traded the bonds, set the markups, acknowledged that he knew the NASD's 5 percent markup policy, and owned 75 percent of FBH.

We therefore find "substantial evidence" for the SEC's findings of fact, *see* 15 U.S.C. § 78y(a)(4) (1988); *Higgins v. SEC,* 866 F.2d 47, 49 (2d Cir.1989), and concur in the Commission's legal conclusions. We deny the petition for review and lift the stay.