68 F.3d 482
 Fed. Sec. L. Rep. P 99,038
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Thomas F. WHITE, et al., Petitioners,
v.
SECURITIES AND EXCHANGE COMMISSION, Respondent.
 
 1
 No. 94-70106.
 
 
 2
 United States Court of Appeals, Ninth Circuit.
 
 Argued and Submitted Aug. 14, 1995.
Decided Oct. 12, 1995.
 
 3
 Before: D.W. NELSON and T.G. NELSON, Circuit Judges, and KING,* District Judge.
 
 
 4
 MEMORANDUM**
 
 
 5
 Thomas F. White & Company, Inc. and John Warren Boudinot (collectively "White") petition from an order of the Securities and Exchange Commission ("SEC") affirming in part a decision of the National Association of Securities Dealers ("NASD") finding that White charged retail customers excessive markups in the sale of corporate bonds. The NASD censured and fined White, and ordered White to refund the excessive markups. White asserts that (1) the markups were reasonable, (2) the NASD markup policy is unconstitutionally void for vagueness, and (3) the sanctions and fines were excessive. We have jurisdiction pursuant to 15 U.S.C. Sec. 78y(a)(1) and DENY the petition.
 
 DISCUSSION
 
 6
 "The findings of the [SEC] as to the facts, if supported by substantial evidence, are conclusive." 15 U.S.C. Sec. 78y(a)(4). "If the evidence is susceptible of more than one rational interpretation, we must uphold the SEC's findings." Eichler v. SEC, 757 F.2d 1066, 1069 (9th Cir. 1985). Legal conclusions of the SEC "are to be set aside if arbitrary, capricious, or otherwise not in accordance with law." Rutherford v. SEC, 842 F.2d 214, 215 (9th Cir. 1987) (citing 5 U.S.C. Sec. 706(2)(A)). "The decisions of the DBCC and NASD's Board of Governors... are not before us." Eichler, 757 F.2d at 1069 n.2 (errors by the District Business Conduct Committee ("DBCC") are reviewed "only to determine if they infected the SEC's action and led to error on its part") (quoting Sorrell v. SEC, 679 F.2d 1323, 1326 (9th Cir. 1982)).
 
 
 7
 White agrees that its markups for the transactions at issue ranged from 7.03% to 14.17%. However, it contends that the markups were not excessive because (1) circumstances in the market justified the markups, and (2) it was a market maker.
 
 
 8
 1. The Reasonableness of the Markups.
 
 
 9
 White argues that the markups were reasonable because of the risk involved with the Coast Savings & Loan ("CS&L") bonds. Under SEC interpretations, this argument is of little merit. "A broker-dealer is not entitled to charge excessive markups merely because it is in a risk position." In re Century Capital Corp. of South Carolina, 52 SEC Docket 1467, 1992 WL 258851, * 3 (SEC) (1992), aff'd, 22 F.3d 1184 (D.C. Cir. 1994) (mem.); In re James E. Ryan, 47 SEC 759, 763, 1982 WL 32453, * 3 (SEC) (1982), aff'd, 709 F.2d 1518 (9th Cir. 1983) (mem.). The risk is factored into the security's price. Further, the SEC's decision considered evidence of the characteristics of the bonds, the nature of the market, the rapid turnover of the bonds to retail customers, and its conclusion that White was not a market maker. The record substantiates these conclusions.
 
 
 10
 White also contends that the markups were relatively low. However, the SEC has upheld violations with fewer transactions or smaller markups. E.g., F.B. Horner & Assoc. v. SEC, 994 F.2d 61, 62 (2d Cir. 1993) (two sales of bonds with markups of 6.91% and 8.09%); In re Investment Planning, Inc., 54 SEC Docket 1770, 1778, 1993 WL 289728, * 2 (SEC) (1993) (4% to 7.26%). True, the NASD's 5% markup policy is not a per se rule. NASD Manual (CCH) p 2154, at 2047. However, even less than a 5% markup may be unreasonable, considering "all the relevant factors." Id. at 2048. Importantly, for debt securities such as the bonds at issue here, a fair markup is generally well below 5%. F.B. Horner, 994 F.2d at 63 ("A 5 percent markup on this type of fixed income instrument [i.e. bonds] is quite generous"); In re Staten Securities, 47 SEC 766, 767, 1982 WL 32503, * 1 (SEC) (1982) (municipal bonds); In re First Honolulu Securities, 55 SEC Docket 63, 1993 WL 380039, * 1 (SEC) (1993) (corporate bonds).
 
 
 11
 In sum, substantial evidence supports the SEC's finding that the markups of between 7.03% to 14.17% were unreasonable. The SEC's legal rulings were not arbitrary and capricious and were in accordance with law. Rutherford, 842 F.2d at 215.
 
 
 12
 2. The Market Maker Determination.
 
 
 13
 Initially, White asserts that it was justified in basing its market price on the quotations it received from Bateman Eichler. The argument fails under well-settled law. Quotations are generally not reliable indications of market price, and contemporaneous cost is the best evidence of market price. F.B. Horner, 994 F.2d at 63; First Independence Group v. SEC, 37 F.3d 30, 32 (2d Cir. 1994); Orkin v. SEC, F.3d , 1994 WL 461848, * 6 (11th Cir. 1994).
 
 
 14
 Next, White argues that it was "effectively a market maker." A market maker, among other things, holds itself out (by entering quotations in an inter-dealer communications system or otherwise) as being willing to buy and sell the security for its own account on a regular or continuous basis. 15 U.S.C. Sec. 78c(a)(38); In re Adams Securities, 53 SEC Docket 1673, 1993 WL 71051, * 2 (SEC) (1993). The SEC points out that White merely bought the CS&L bonds from other dealers and quickly resold them to retail customers. White did not hold itself out as a market maker. White did not publish quotations to other dealers for the bonds. It made no sales to dealers. It sold exclusively to retail customers on the same day or within a few days after buying the bonds. And merely because the bonds were risky did not qualify White as a market maker. In re Century Capital Corp. of South Carolina, 52 SEC Docket 1467, 1992 WL 258851, * 4 n.5. These findings are supported by substantial evidence. The SEC's findings were not clearly erroneous.
 
 
 15
 3. The Constitutionality of the NASD Markup Policy.
 
 
 16
 Next, White argues that the NASD's 5% markup policy is impermissibly vague because it did not put White on notice of the illegality of the markups. This argument was not made to the Commission. The SEC's decision contains no mention of a vagueness issue. The decision notes that "all of the arguments advanced by the parties have been considered." We therefore do not reach the constitutional issue. See Eichler 757 F.2d at 1071 ("We may only address issues that were raised before the SEC.... [T]he petitioners never even mentioned the possibility that Article III, section 1 is unconstitution[ally vague]. Accordingly, we decline to consider the issue.") (citation omitted).
 
 
 17
 4. Excessiveness of Sanctions.
 
 
 18
 Lastly, White asserts that the sanctions were excessive. The reviewing court reviews the SEC's particular sanctions for abuse of discretion. Amato v. SEC, 18 F.3d 1281, 1284-85 (5th Cir.), cert. denied, 115 S. Ct. 316 (1994). The sanctions may not be overturned unless "unwarranted in law or without some justification in fact." Sirianni v. SEC, 677 F.2d 1284, 1288 (9th Cir. 1982).
 
 
 19
 White points out that (1) there was no evidence of a pattern of violations, (2) the markups were marginally over 5%, and (3) the transactions involved high risk. The SEC contends that these factors have already been taken into account. The sanctions here--censure, a $10,000 fine, and restitution--are not disproportionate to other cited incidents. The SEC did not abuse its discretion.
 
 CONCLUSION
 
 20
 For the foregoing reasons we DENY the petition.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3