T.C. Memo. 1996-306


UNITED STATES TAX COURT


MAYER AND NINETTE STISKIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 36140-86.                    Filed July 8, 1996.


In 1980, P became a limited partner in a tax
shelter limited partnership.  In 1986, the Commissioner
issued a notice of deficiency for 1982 relating to
deductions claimed in connection with the limited
partnership, and Ps filed a petition in this Court.  In
1988, 2 years after the case was docketed in this
Court, Ps signed a Form 906, "Closing Agreement on
Final Determination Covering Specific Matters."
    <u>Held</u>:  The closing agreement did not oust this
Court of jurisdiction.
    <u>Held</u>, <u>further</u>, the closing agreement itself was in
any event void because signed on behalf of the IRS by
an Associate Chief of Appeals who did not have the
authority to enter into a closing agreement in a case
docketed in this Court.  Delegation Order No. 97 (Rev.
19), 47 Fed. Reg. 19842 (May 7, 1982); Delegation Order
No. 225 (Rev. 1), 52 Fed. Reg. 13008 (Apr. 20, 1987).

Peter L. Ente, for petitioners.

Marcie B. Harrison, for respondent.

MEMORANDUM OPINION

RAUM, Judge:  The Commissioner determined a deficiency in petitioners' 1982 Federal income tax in the amount of $7,686, and additions to tax and increased interest as follows:

| Sec. 6653(a)(1)[1] | Sec. 6653(a)(2) | Sec. 6661 | Sec. 6621 |
|---|---|---|---|
| $384.30 | 50% of the interest due on $7,686 | $768.60 | 120% of the adjusted rate |

This matter is before us on the Commissioner's Motion for Summary Judgment and/or Entry of Decision and Petitioners' Motion for Leave to File Amendment to Petition.

Petitioners, Mayer and Ninette Stiskin, are husband and wife.  They resided in New York, New York, at the time their petition in this case was filed.  Use of the word petitioner in the singular will refer to petitioner husband.  In 1980, petitioner became a limited partner in Opal Leasing Associates ("Opal Leasing" or "the partnership"), a limited partnership. His interest in Opal Leasing continued at least into 1982.

On June 13, 1986, the Commissioner issued a notice of the foregoing deficiency to petitioners for the taxable year 1982.

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

The notice of deficiency disallowed losses claimed by petitioners from Opal Leasing on the ground that petitioner was not "at risk" within the meaning of section 465 with respect to his investment in the partnership.

Petitioners filed their petition with this Court on September 8, 1986. Subsequently, on March 4, 1988, they signed a Form 906, "Closing Agreement on Final Determination Covering Specific Matters". The form was signed by the IRS representative, Associate Chief, NYC Appeals, on March 24, 1988.

Under the closing agreement, petitioners were entitled to an ordinary deduction from taxable income for 1980 in the amount of $6,027, "being equal to 100% of taxpayer's investment in the partnership". The agreement further provided that petitioners were not entitled to any deductions of losses or credits in connection with Opal Leasing for any other taxable year. Also, petitioners would not be liable for additional interest under section 6621(c) or for any additions to tax on any portion of any deficiency arising under the closing agreement.

The IRS did not immediately implement the closing agreement. Meanwhile, there was pending in this Court a tax shelter case involving facts similar to those present here, Thornock v. Commissioner, 94 T.C. 439 (1990). In that case this Court found that, as here, the initial nonrecourse financing, the guarantees made to the partners by other participants in the transaction, together with other features of the transaction, such as the

essentially offsetting nature of the various lease and note payments, resulted in a protection against loss for the limited partners under section 465(b)(4). Id. at 450-452. The Court held that the limited partners in the partnership there involved, Tiger Lily, had no real economic liability on the partnership debt, and hence were not "at risk" with regard to the partnership notes. Therefore, the taxpayers were not entitled to flow-through deductions on their income tax returns for those years. Id. at 450. Both Opal Leasing and Tiger Lily were 2 of approximately 160 partnerships included in the so-called EMC Equipment Leasing Project. The Commissioner contends that the financial structure of the transaction in Opal Leasing is factually indistinguishable from the financial structure of the transactions in Thornock for purposes of section 465(b)(4).

Subsequent to the decision in Thornock, this Court decided another case involving equipment leasing, Waters v. Commissioner, T.C. Memo. 1991-462, affd. 978 F.2d 1310 (2d Cir. 1992). Waters concerned taxpayers who invested in partnerships the financial structures of which were similar to those in Thornock, in that the partnerships used nonrecourse financing, guarantees, and the offsetting of lease and note payments. This Court held that the taxpayers in Waters were not "at risk" within the meaning of section 465(b)(4) with respect to their investment in the equipment leasing transaction. The Second Circuit affirmed, holding that the result was required, as in Thornock, by the

initial nonrecourse financing and the guarantees made to the partners by other participants in the transaction, together with other features of the transaction, such as the essentially offsetting nature of the various lease and note payments.  Id. The Commissioner contends that the financial structure of the transaction in Opal Leasing is indistinguishable from the financial structure of the transactions in Waters for purposes of section 465(b)(4).

On March 24, 1994, the IRS sent petitioners proposed decision documents, based on the decision in Thornock v. Commissioner, 94 T.C. 439 (1990), reflecting the terms of the closing agreement.  On September 9, 1994, the IRS sent petitioners a letter reminding them that they had failed to sign and return the proposed decision documents and requesting that they do so as soon as possible.  When petitioners did not return the signed decision documents, the Commissioner filed a motion for summary judgment to enforce the terms included in both the closing agreement and the proposed decision documents. Petitioners filed a response to the motion for summary judgment as well as their own motion for leave to amend their petition. In each, they contend, in reliance upon section 7121(b)(2), that "Entry of Decision in this docketed case would have the prohibited effect of setting aside the Closing Agreement".  No such contention had previously been made, and petitioners' motion to amend their petition seeks for the first time to inject the

issue in the case, in an attempt to oust this Court of jurisdiction over the entire case.

Section 7121(b)(2) provides that in any legal proceeding, a closing agreement "shall not be annulled, modified, set aside, or disregarded." Petitioners' position appears to be that since the parties settled using the closing agreement, the Tax Court is deprived of the power to determine the amount of the deficiency. In the motion for leave to amend their petition, petitioners argue, in substance, that by affirmatively pleading the closing agreement, the Court would be without jurisdiction and would be required to dismiss the case. According to petitioners, a closing agreement coupled with affirmative pleading ousts the Tax Court of jurisdiction pursuant to section 7121(b).

Petitioners challenge only the enforcement of the closing agreement by this Court. They do not respond to the Government's position that their case is factually indistinguishable from Thornock v. Commissioner, 94 T.C. 439 (1990), or Waters v. Commissioner, supra. Nor do they contest the amount of the deficiency agreed to in the closing agreement. But they do press the highly dubious contention that even though this Court obtained jurisdiction by the filing of their petition (on September 8, 1986), it would be divested of jurisdiction by the subsequent (March 1988) closing agreement.[2]

---

[2] In substance, by preventing this Court from entering a
(continued...)

First, the jurisdictional point may be dealt with summarily. Once the Court, as here, has jurisdiction, it may not thereafter be divested of jurisdiction. See, e.g., Main-Hammond Land Trust v. Commissioner, 17 T.C. 942, 956 (1951), affd. 200 F.2d 308 (6th Cir. 1952); Browning v. Commissioner, T.C. Memo. 1974-80.

Second, petitioners' position is based upon the untenable assumption that there was a valid closing agreement to begin with. In our judgment, no valid closing agreement was even entered into. The closing agreement here involved was signed by the Associate Chief, NYC Appeals, who had no authority to do so on behalf of the Commissioner.

Delegation Order No. 97 provides that "Chiefs and Associate Chiefs of Appeals Offices * * * are hereby authorized in cases under their jurisdiction (but excluding cases docketed before the United States Tax Court) to enter into and approve a written agreement with any person relating to the Internal Revenue tax liability of such person * * * for a taxable period or periods ended prior to the date of agreement and related specific items affecting other taxable periods." (Emphasis added.) Delegation Order No. 97 (Rev. 19), 47 Fed. Reg. 19842 (May 7, 1982), was

---

²(...continued)
decision against them, petitioners obviously seek to prevent the Commissioner from assessing a deficiency against them based upon the closing agreement, because a closing agreement standing alone arguably may not give the Commissioner the right to make an assessment absent a waiver by petitioners. Cf. sec. 6213(a).

amended and supplemented by Delegation Order No. 225 (Rev. 1), 52 Fed. Reg. 13008 (Apr. 20, 1987), effective Oct. 31, 1987.[3] Read together, these delegation orders preclude specified officers of the IRS, including Associate Chiefs of Appeals, from entering into closing agreements regarding tax shelter cases docketed in the Tax Court, where, as here, the investment was made prior to January 1, 1983. Webb v. Commissioner, T.C. Memo. 1994-549, affd. without published opinion 68 F.3d 482 (9th Cir. 1995).

---

[3] Delegation Order No. 225 provides as follows:

1. The Associate Commissioner (Operations), Assistant Commissioners (Examination) and (International), Regional Commissioners, Assistant Regional Commissioners (Examination), District Directors, Service Center Directors, and Compliance Center Director, Chiefs, Examination Division, and Examination Managers and Supervisors GM-13 and GM-14 in Districts, Service Centers and Compliance Center are hereby authorized in cases under their jurisdiction to enter into and approve a written agreement with any person relating to the Internal Revenue liability, of such person (or of the person or estate for whom he/she acts) to close pre-ERTA tax shelter commodity issues
* * * and other tax shelter initiative issues based on settlement positions reached by Chief Counsel or Appeals on the specific shelter where the initial investment was made prior to January 1, 1983. These agreements will be executed on * * * Form 906, Closing Agreement on Final Disposition Covering Specific Matters. The authority delegated herein extends only to tax shelter issues, including penalties or related statutory issues that must be adjusted due to settlement of the tax shelter issues. * * *

2. The authorities contained in this order * * * amends and supplements Delegation Order No. 97 (as revised). * * *

An agreement entered into by an unauthorized act of an agent of the United States is null and void. "[T]he United States is not bound by the unauthorized acts of its agents, nor is it estopped to assert lack of authority as a defense." Dorl v. Commissioner, 507 F.2d 406, 407 (2d Cir. 1974), affg. per curiam T.C. Memo. 1973-145. The closing agreement in this case was executed by an Associate Chief of Appeals. Since the case was already docketed in the Tax Court when the closing agreement was signed, the Associate Chief of Appeals here did not have authority to sign the closing agreement on behalf of the Commissioner. Thus, the closing agreement is void. Dorl v. Commissioner, supra at 407; Webb v. Commissioner, T.C. Memo. 1994-549.

Both Petitioners' Response to Respondent's Motion for Summary Judgment and petitioners' motion for leave to amend are based on the closing agreement. Both raise the same point: That because of the closing agreement, the Court lacks jurisdiction pursuant to section 7121 and must dismiss the case. Since the closing agreement is void, these arguments must fail.[4]

---

[4] Even if the response and the motion for leave to amend are considered separately, petitioners' motion for leave to amend should be denied in any event. Rule 41(a) allows a party to amend its petition within 30 days after it is served or by leave of the Court if "justice so requires". We note that 10 years have passed since the original petition was filed, and 8 years have passed since petitioners signed the closing agreement admitting their liability for the taxes involved here. Granting petitioners' motion might have the anomalous result of relieving

(continued...)

Petitioners do not now dispute the substance of the transaction, nor do they now appear to challenge their liability for the deficiency, additions to tax, and increased interest determined in the notice of deficiency.[5] We note that although the closing agreement is void, granting the motion for summary judgment or entering a decision in favor of the Commissioner in fact ironically implements the terms of the closing agreement, upon which petitioners rely in their attempt to prevent the Court from entering a decision against them.

To reflect the foregoing,

An order will be entered granting the Commissioner's motion for summary judgment and denying petitioners' motion for leave to file amendment to petition.

---

[4](...continued)
them of liability for taxes they have admitted they owe. See supra note 2. To paraphrase Rule 41(a), justice does not so require here.

[5] Although the closing agreement is void and the notice of deficiency would appear to control, we will not order that petitioners be liable for the additions to tax or increased interest. The IRS in its Memorandum of Law in support of its motion for summary judgment concedes the issue. It states "Based upon the foregoing, it is prayed that the Court enter a decision reflecting a deficiency in the amount of $7,686.00 for the taxable year 1982, with no additions to tax pursuant to I.R.C. §§ 6653(a)(1), 6653(a)(2) and 6661."