Peter **EICHLER** and Basil Witt, Petitioners,

v.

The **SECURITIES AND EXCHANGE COMMISSION,** Respondent.

No. 84–7236.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 1985.

Decided April 12, 1985.

---

**10.** Paccint's motion to dismiss or, in the alternative, to strike portions of CBK's brief is denied.

Craig B. Jorgensen, Los Angeles, Cal., for petitioners.

Eric Summergrad, Washington, D.C., for respondent.

Before CHAMBERS, BOOCHEVER and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Peter Eichler and Basil Witt brought this action seeking review of an order issued by the Securities and Exchange Commission ("SEC"). The SEC's order affirmed disciplinary sanctions imposed upon Eichler and Witt by the National Association of Securities Dealers, Inc. ("NASD"). We affirm.

## I

### BACKGROUND

Bateman Eichler, Hill Richards, Inc. ("BEHR") is registered as a broker-dealer with the SEC and is a member of NASD. At the time of the events at issue in this case, Eichler was president of BEHR and Witt was the head of BEHR's trading de-

partment. William Walker was BEHR's syndicate manager.

In March 1977, BEHR served as managing underwriter for a syndicate of thirty-one firms that were underwriting a public offering of securities by Jhirmack Enterprises, Inc. ("Jhirmack"). The syndicate offered a total of 385,000 shares of Jhirmack stock. When BEHR and the other firms completed the distribution of Jhirmack shares on March 24, 1977, the syndicate had sold 398,200 shares, leaving the syndicate "short" 13,200 shares. BEHR was responsible for covering its share of the syndicate's short position.

After the syndicate completed the distribution, BEHR began taking orders from its customers for the "aftermarket" for Jhirmack shares. When trading in Jhirmack stock commenced on March 25, BEHR was obligated to purchase a large number of shares for its customers in addition to covering its share of the syndicate's short position. Along with fourteen other brokerage firms, BEHR held itself out as a "market maker" for Jhirmack stock.

The officials at BEHR soon realized that BEHR's bid price would not be sufficient to acquire the number of shares that BEHR needed. Because the demand for Jhirmack shares greatly exceeded the supply, the officials at BEHR feared a dramatic price increase. Walker informed Witt that, under the circumstances, it would not be necessary to fill the syndicate's short position immediately. Rather than raising the bid price to a level that would attract a sufficient number of shares, Witt and Eichler decided to maintain the bid price at or near the market price. Witt and Eichler also decided to purchase only a portion of the shares being offered by other dealers, since excessive purchases would drive up the market price. Instead, Witt and Eichler decided to allocate the available shares among their customers at an average price determined at the close of the trading day.

On March 25, BEHR filled approximately fifty percent of each order at an average price of 13⅛. On March 28, the next trading day, BEHR filled sixty percent of each order at an average price of 14⅞. The allocation system ended at 9:43 a.m. on March 29. Orders received before 9:43 a.m. were partially filled at an average price of 15⅜. Orders received after 9:43 a.m. were completely filled at the market price.

On March 25, 28, and 29, BEHR took fifty-six "market orders." Under a "market order," the broker is expected to fill the order completely at the best available market price, with the customer bearing the risk of price increases. BEHR purchased only 12,375 of the 23,875 shares that were ordered on that basis.

Many of BEHR's customers were not notified of the allocation until after it had been completed. Those who were notified were told only that BEHR could not fill their orders completely. On the three days in question, however, BEHR purchased 11,350 shares to reduce its share of the underwriting syndicate's short position. In addition, BEHR sold 15,612 shares to other firms, rather than to its own customers.

Following a customer complaint, the staff of NASD's District Business Conduct Committee for District No. 2 ("the DBCC") began to investigate BEHR's actions. The staff filed a complaint against BEHR, Eichler, Witt, and Walker ("the BEHR group"). The complaint alleged violations of federal securities law and Article III, section 1 of NASD's Rules of Fair Practice, which states: "A member, in the conduct of his business, shall observe high standards of commercial honor and just and equitable principles of trade." After an evidentiary hearing, the DBCC found that the BEHR group had violated the Rules of Fair Practice, but not federal securities law. On September 27, 1979, the DBCC censured the BEHR group and assessed a joint and several fine of $20,000.

The BEHR group appealed to the Board of Governors of NASD. After a further evidentiary hearing, the Board of Governors affirmed the judgment of the DBCC on October 2, 1980. The BEHR group then appealed to the SEC for a de novo review. On January 8, 1982, the SEC overturned

the penalty assessed against Walker, but affirmed the remainder of the Board of Governors' findings. The SEC remanded the action to the Board of Governors for reconsideration of the fine in light of the dismissal of the charges against Walker. On remand, the Board of Governors reaffirmed its findings, but reduced the fine to $15,000. On March 29, 1984, the SEC affirmed.[1]

## II

## SUBSTANTIAL EVIDENCE

"The findings of the Commission as to the facts, if supported by substantial evidence, are conclusive." 15 U.S.C. § 78y(a)(4); *see Erdos v. SEC*, 742 F.2d 507, 508 (9th Cir.1984). Substantial evidence constitutes " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). If the evidence is susceptible of more than one rational interpretation, we must uphold the SEC's findings.[2] *See Lombardo v. Schweiker*, 749 F.2d 565, 566 (9th Cir.1984).

The SEC found that BEHR had a duty either to execute its customers' market orders to the greatest extent possible or to obtain their informed consent to a different arrangement. The SEC concluded BEHR had violated that duty.

### A. *Failure to Execute Transactions*

■ The petitioners contend that the SEC's conclusion that BEHR failed to exe-

cute transactions to the greatest extent possible is not supported by substantial evidence. Actually, the petitioners do not challenge the evidentiary basis of the SEC's findings. Instead, the petitioners attempt to justify their failure to fill their customers' market orders. The asserted justifications are without merit.

First, the petitioners argue that raising BEHR's bid price would have inflated the market price, exposing BEHR to customer complaints. While that may be true, it is just as likely that BEHR's failure to fill its customers' orders would have generated complaints if BEHR's customers had known the reasons for BEHR's allocation policy. In any event, the SEC addressed this argument in its second opinion:

Where an unusual market situation exists, and the immediate execution of market orders would result in significant disruption in the market and, consequently, in executions that would vary significantly from customer expectations at the time the orders were entered, it may well be preferable for a firm to contact its customers promptly, inform them of the change in market conditions, and obtain further instructions from those customers with respect to the execution of their orders. But a firm cannot substitute its own judgment for its customers' informed consent to changes in their orders' terms or manner of execution. In the absence of such consent, a firm has a duty to execute customer orders fully and promptly.

Second, the petitioners argue that there was no active interdealer market and no adequate supply of stock away from BEHR.[3] The petitioners contend that

---

**1.** BEHR, Eichler, and Witt petitioned this court for review. On June 26, 1984, BEHR voluntarily dismissed its petition.

**2.** We have jurisdiction to review the SEC's order under 15 U.S.C. § 78y(a)(1). The decisions of the DBCC ·and NASD's Board of Governors, however, are not before us. *Shultz v. SEC*, 614 F.2d 561, 568 (7th Cir.1980); *see Sorrell v. SEC*, 679 F.2d 1323, 1326 (9th Cir.1982) (noting that errors by the DBCC are reviewed "only to deter-

mine if they infected the [SEC's] action and led to error on its part").

**3.** The factual premise of the petitioners' argument is incorrect. The petitioners based their assertion that no active interdealer market existed on the findings of NASD's Board of Governors. The Board of Governors, however, merely found that there was no active interdealer market *away from BEHR*. With regard to the existence of an adequate supply of stock away from BEHR, we note that BEHR purchased

BEHR therefore "dominated" the market, so that they would have been subject to discipline if they had raised BEHR's bid price. *See In re Norris & Hirshberg, Inc.*, 21 S.E.C. 865 (1946), *aff'd*, 177 F.2d 228 (D.C.Cir.1949). It is not clear that BEHR "dominated" the market, especially in light of the presence of fourteen other market makers. In any event, *Norris & Hirshberg* only requires the dominant firm to disclose its position to its customers. 21 S.E.C. at 881–82.

### B. *Failure to Notify Customers*

The petitioners also contend that the SEC's conclusion that BEHR made inadequate disclosure to its customers is not supported by substantial evidence. The petitioners' arguments are largely based on the misconception that the SEC found that BEHR had an independent duty to notify its customers of the conditions in the market for Jhirmack shares. In fact, the SEC found that BEHR had two choices after it accepted market orders for Jhirmack shares: (1) fill the orders, or (2) obtain its customers' informed consent to an allocation system. Because BEHR chose not to fill the orders, the SEC concluded that BEHR had a duty to obtain its customers' informed consent. The SEC found that BEHR had violated that duty. The petitioners challenge that finding on several grounds, all of which are without merit.

■ First, the petitioners argue that the record contains no evidence in support of the SEC's finding and that the SEC improperly placed the burden of proof on BEHR. In fact, the record reveals that BEHR's customers were only told that BEHR could not fill their orders and had decided to impose an allocation system. The customers were not told that BEHR could have executed their orders fully at a higher price or that other market makers had shares available. The customers were not given the option of full execution at a higher price. As a result, the SEC's finding that BEHR's notification efforts were inadequate is supported by substantial evidence.

over 11,000 shares for its own account and sold

■ Second, the petitioners argue that the responsibility for notifying customers rested with BEHR's salesmen, rather than with BEHR's president and the head of its trading department. Eichler and Witt, however, had made the decision not to fill the customers' orders fully. As a result, they had a duty to obtain the informed consent of the customers. While it is true that Eichler and Witt had no duty to call each customer personally, they did have a duty to instruct BEHR's salesmen to make appropriate disclosure to the customers. Eichler and Witt did not do so.

■ Third, the petitioners argue that the SEC's finding is inconsistent with the finding of NASD's Board of Governors that BEHR could not have made adequate disclosures. In fact, the Board of Governors concluded that BEHR was obligated to fill each order fully because it was impossible to obtain the customers' informed consent to an allocation system. This conclusion is consistent with the SEC's position. In any event, the SEC reviews the record de novo and makes it own findings of fact. *See Shultz*, 614 F.2d at 568. Accordingly, the SEC is not bound by the Board of Governors' findings.

■ Finally, the petitioners argue that BEHR's customers ratified its treatment of their orders by failing to complain. *See Brophy v. Redivo*, 725 F.2d 1218, 1220–21 (9th Cir.1984). The principle of ratification, however, does not apply to cases in which a customer's consent is obtained through misrepresentations. *See id.; Kehr v. Smith Barney, Harris Upham & Co.*, 736 F.2d 1283, 1286 n. 2 (9th Cir.1984). In addition, ratification only applies to an action under rule 10b–5. In a proceeding under the Article III, section 1 of the Rules of Fair Practice, concepts such as fraud, scienter, and injury are irrelevant. *Cf. Erdos*, 742 F.2d at 508 (noting that scienter is not required under Article III, section 2).

### C. *The Nature of the Over-the-Counter Market*

■ The petitioners argue that the SEC's opinion is based on a misconception

over 15,000 shares to other dealers.

of the over-the-counter ("OTC") market. They contend that BEHR was obligated to maintain an orderly market for Jhirmack shares. The SEC correctly rejected this argument in its second opinion. While a specialist on a stock exchange has a duty to maintain an orderly market, *see* 17 C.F.R. 240.11b–1, an OTC market maker's sole duty is to its customers. The petitioners also argue that BEHR's allocation system was in the best interests of its customers. While that may be true, BEHR had no authority to implement such a system without the informed consent of its customers. The SEC's conception of the OTC market is correct.

## III

### VAGUENESS

 The petitioners contend that Article III, section 1 of NASD's Rules of Fair Practice is unconstitutionally vague.[4] The premise of this argument is that Article III, section 1 does not specify the types of behavior that are proscribed. Accordingly, the petitioners contend that the sanctions imposed against them were impermissible.

We may only address issues that were raised before the SEC. 15 U.S.C. § 78y(c)(1); *see Sartain v. SEC*, 601 F.2d 1366, 1371 (9th Cir.1979). The petitioners did not raise this issue before the SEC. While the petitioners argued that the standards governing the behavior of broker-dealers in cases such as this are unclear, the petitioners never even mentioned the possibility that Article III, section 1 is unconstitutional. Accordingly, we decline to consider the issue.

## IV

### CONCLUSION

The order of the SEC is AFFIRMED.

---

**4.** Alternatively, the petitioners argue that SEC's decision to uphold their punishment violated the SEC's duty to insure fair treatment to NASD members. *See Todd & Co. v. SEC*, 557 F.2d 1008, 1014 (3d Cir.1977). The SEC's duty to insure fair treatment to NASD members is satisfied by the SEC's independent review of NASD decisions. *See id.* Accordingly, this argument has no application to this case.