Russell G. DAVY, Petitioner,

v.

SECURITIES AND EXCHANGE COMMISSION, Respondent.

No. 85–7328.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 15, 1986.

Decided June 26, 1986.

Stuart D. Perlman, Chicago, Ill., for petitioner.

Ronald R. Massumi, Linda D. Fienberg, S.E.C., Washington, D.C., for respondent.

Before SNEED and FARRIS, Circuit Judges and McDONALD,* District Judge.

FARRIS, Circuit Judge:

Russell Davy, an accountant, appeals from an order issued by the Securities and

* Honorable Alan McDonald, United States District Judge for the Eastern District of Washington, sitting by designation.

Exchange Commission under Rule 2(e) (17 C.F.R. 201.2(e)) barring him from practice before the Commission. The SEC found that Davy had engaged in improper professional conduct and had willfully violated the federal securities laws by certifying financial statements which were inaccurate. The statements were subsequently used to register, market, and sell securities.

FACTS

This disciplinary action arises from an audit performed in 1979 by Davy, a Certified Public Accountant, on SNG Oil & Gas Company. Davy audited SNG at the request of its comptroller, Ian Allison, for its fiscal years 1977 and 1978. He had previously audited other companies for Allison, some of them publicly held and thus subject to the SEC's reporting requirements.

The audits of SNG that Davy performed in 1977 and 1978 revealed SNG to be little more than a shell. It was closely held with few assets and almost no on-going business activity. At the close of the 1979 fiscal year, Allison again asked Davy to perform an audit and certify the financial statements of SNG. Allison told Davy that the only change would be the contribution of some new assets, including real estate, by a new shareholder pursuant to an agreement. To verify that SNG owned the new assets, Allison provided only a journal entry and an unexecuted contract of transfer. Davy, in breach of his duty under Generally Accepted Auditing Standards to determine whether reported assets are actually owned by the audited corporation, sought no further documentation of the transfer. (The transfer in fact did not take place until after SNG's stock began publicly trading and the SEC began its investigation of SNG.)

The statements that Davy certified, in reliance upon Allison rather than through his own efforts, showed a nine-fold increase in shareholder's equity and an elev-en-fold increase in total assets from 1978 to 1979. The statements also listed "Sales" and "Cost of Sales" as well as a note on "Inventory," even though Davy knew that this conveyed the false impression that SNG had on-going business operations.

On October 29, 1979, Davy signed the unqualified audit report, certifying that his audit was conducted in accordance with Generally Accepted Auditing Standards and that the financial statements were presented in conformity with Generally Accepted Accounting Principles. After issuing his report, Davy received an appraisal of the real estate, a bank confirmation, and an appraisal of the mineral rights, all of which showed ownership in persons other than SNG. Rather than investigating these inconsistencies and correcting his report, Davy ignored these discrepancies, filing the documents with his personal audit workpapers. Davy does not dispute that his audit violated Generally Accepted Auditing Standards and Generally Accepted Accounting Principles.

Davy's report and statements were filed with the SEC by Allison in December of 1979 as part of a registration statement for the public sale of SNG's stock. Allison also prepared a "due diligence" file which contained copies of the SEC filing and Davy's report. Allison gave a copy of the due diligence file to Davy, and Davy admits that he checked it to see if it contained his report.

By February 1, 1980, SNG was listed for trading. After two ten-day suspensions for "unusual and unexplained" market activity and a "lack of adequate and accurate public information about the [company's] operations and financial condition," trading in SNG's stock was suspended indefinitely.

The case reached the SEC after a full evidentiary hearing before an administrative law judge.[1] The SEC reviewed inde-

---

1. The case was originally consolidated with that of another accountant who certified the statements of another Allison-related corporation. That case was dismissed when the accountant agreed to an injunction prohibiting him from practicing before the SEC. *SEC v. Amundsen,* Civ. No. C83–0711 RPA (N.D.Cal.).

pendently the ALJ's findings, and, after briefing and argument, issued its order affirming the ALJ. The order held that Rule 2(e) was not ultra vires, that Davy was within the jurisdiction of the SEC, and that Davy had violated the rule.

STANDARD OF REVIEW

■ Davy's contentions that Rule 2(e) is beyond the statutory authority of the SEC and that the SEC lacks jurisdiction to discipline him are legal questions reviewable de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

"The findings of the Commission as to the facts, if supported by substantial evidence, are conclusive." 15 U.S.C. § 78y(a)(4). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938) ). If the evidence is susceptible of more than one rational interpretation, the panel must uphold the SEC's findings. *Eichler v. SEC*, 757 F.2d 1066, 1069 (9th Cir.1985).

DISCUSSION

1. SEC authority to promulgate Rule 2(e).

Rule 2(e) (17 C.F.R. 201.2(e) ) permits the SEC to bar from practice before it any person who is unqualified, who violates ethical standards, or who violates the securities laws. Rule 2(e) derives its statutory authority from § 23(a)(1) of the 1934 Act (15 U.S.C. § 78w(a)(1) ) which empowers members of the Commission to "make such rules and regulations as may be necessary or appropriate to implement the provisions of this chapter for which they are responsible or for the execution of the functions vested in them by this chapter...."

■ Davy argues that the general authority to "make such rules and regula-

tions as may be necessary and appropriate" does not include the specific power to regulate accountants and bar them from practice before the Commission. To exercise such specific power, Davy contends, requires a specific statutory grant from Congress.

We understand but reject this argument. The authority of the SEC to discipline accountants and bar them from practice before the Commission under Rule 2(e) was expressly upheld in a thorough opinion by Judge Timbers of the Second Circuit, whose reasoning we adopt. *Touche Ross v. SEC*, 609 F.2d 570 (2d Cir.1979). No court has since disagreed with *Touche Ross*. In other administrative contexts, agencies have been given the power to police the conduct of those who practice before them or participate in their programs. *Polydoroff v. ICC*, 773 F.2d 372, 374 (D.C.Cir.1985); *West v. Bergland*, 611 F.2d 710 (8th Cir.1979), *cert. denied*, 449 U.S. 821, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980).

Davy looks for support in various periodical pieces and the well-publicized position of a former SEC Commissioner, Roberta Karmel, that Rule 2(e) should not be used to regulate accountants or lawyers. *SEC Standard of Conduct for Lawyers*, 37 Bus.Law. 915 (1982); Marsh, *Rule 2(e) Proceedings*, 35 Bus.Law. 987 (1980); Gruenbaum and Steinberg, *Accountants' Liability and Responsibility*, 13 U.Loy.L.A.L. Rev. 247, 268–287 (1980); *Regulation of the Accounting Profession Through Rule 2(e) of the SEC's Rules of Practice: Valid or Invalid Exercise of Law*, 46 Brooklyn L.Rev. 1159, 1172–1189 (1979); Downing and Miller, *The Distortion and Misuse of Rule 2(e)*, 54 Notre Dame L.Rev. 774 (1979). Karmel, *Regulation by Prosecution, the SEC v. Corporate America*, (1982); Daley and Karmel, *Attorneys' Responsibilities: Adversaries at the Bar of the SEC*, 24 Emory L.J. 747 (1975); Karmel, *Attorneys' Securities Law Liabilities*, 27 Bus.Law. 1153 (1972); Dissents by former Commissioner Karmel: *In the Mat-*

ter of *Darrel L. Nielson,* Securities Exchange Act Release No. 16479 (Jan. 10, 1980); *In the Matter of Bernard J. Coven,* Securities Exchange Act Release No. 16448 (Dec. 21, 1979); *In the Matter of Richard D. Hodgin,* Securities Exchange Act Release No. 16225 (Sep. 27, 1979).

No court has adopted the view espoused in this literature. The cases that Davy relies on are inapposite, involving actions against accountants under substantive provisions of the securities laws rather than under the disciplinary provisions of Rule 2(e). Our opinion, for example, in *SEC v. Arthur Young & Co.,* 590 F.2d 785 (9th Cir.1979), relied on by Davy in his brief and at argument, discusses an enforcement action brought against an accounting firm for violations of the securities law; the case was not a disciplinary action under Rule 2(e).

■ Davy also makes the argument that because the SEC cannot regulate unenumerated persons under § 14(b) of the 1934 Act, it therefore cannot regulate accountants under § 23(a) of the same Act. We reject the argument. Section 14(b) specifically enumerates the persons to which it applies, so the SEC is properly without the power to regulate unenumerated persons under that section. Section 23(a), under which Rule 2(e) was promulgated, is not so limited.

2. SEC jurisdiction over Davy.

■ The SEC has jurisdiction over Davy for two reasons. First, Davy's audit reports were used in an SEC filing and to market and sell securities to the public. Second, Davy was shown the due diligence file before (or at the time) public trading began. As an experienced accountant, he cannot, and does not, deny that he knew the purpose of a due diligence file. Davy acquiesced in the use of his misleading reports in an SEC filing.

Davy contends that he did not know at the time of his audit that the reports were for anything other than internal use by the privately held SNG. Yet when Allison showed him the due diligence file and he verified the inclusion of his audit reports, Davy had clear evidence that his reports were being put to public use and were being prepared for SEC filing.

We do not consider whether cases *can* arise in which the SEC in Rule 2(e) matters exceeds its proper jurisdictional boundaries. The precise reach of the SEC in these situations has not been defined and we leave that task for a future case which implicates that question directly.

3. Substantial evidence supporting the SEC's findings.

a) Improper professional conduct.

■ Davy does not dispute that his audit breached the standards of his profession. Such a breach constitutes improper professional conduct. As with the jurisdictional question, there may be cases where the SEC should not be empowered to determine the standards by which accountants, or attorneys for that matter, are to be judged. Davy's breach of Generally Accepted Auditing Standards and Generally Accepted Accounting Principles, however, are so clear and so uncontroverted that any vagueness in the Rule is not at issue here. We pretermit any discussion of the SEC's power to determine standards for discipline under Rule 2(e) until we have the issue squarely before us.

b) Willful violation of the federal securities laws.

The SEC found as an additional ground that Davy "knowingly participated in the fraud practiced by SNG on the investing public" and that he was at the least "recklessly indifferent to the consequences of his actions for public investors who could be expected to rely on his report," thus violating § 17(a) of the 1933 Act (15 U.S.C. § 77q(a)) and § 10(b) and Rule 10b–5 of

the 1934 Act (15 U.S.C. 78j(b) and 17 C.F.R. 240.10b–5).

■ There is substantial evidence to support this finding. Davy knew that his audit report was misleading; he received additional evidence that SNG did not own the assets he certified; he knew that the securities of two other companies that he had audited for Allison had been registered and offered to the public; he saw the due diligence file; he took no action at any time to correct his report or to prevent its use.[2]

AFFIRMED.

---

**2.** Even though there is substantial evidence to support the SEC's findings as to Davy under Rule 2(e)(1)(iii), this provision of the rule is not without problems. It permits the SEC to discipline accountants who willfully violate or willfully aid and abet the violation of any federal security law. Yet it is open to many questions. Must the SEC first obtain a conviction before it can bring a disciplinary proceeding under this section (this is clearly not the practice of the SEC)? Must the SEC prove every element of the underlying violation before it can discipline the offender? What is the standard of proof for establishing a violation under Rule 2(e)? What does the term "willfully" in Rule 2(e) add to the underlying securities violations: is it a requirement beyond the scienter element of most antifraud violations or is it identical with the scienter element?