29 F.3d 630
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Timothy Lane BURKES, Petitioner,
v.
SECURITIES AND EXCHANGE COMMISSION, Respondent.
 No. 93-70527.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 18, 1994.*
Decided July 25, 1994.
 
 Before: FARRIS, KOZINSKI, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Timothy Lane Burkes petitions pro se for review of the Securities and Exchange Commission's ("SEC") decision finding that Burkes violated the Rules of Fair Practice of the National Association of Securities Dealers ("NASD") and upholding sanctions imposed on Burkes by the NASD. We have jurisdiction pursuant to 15 U.S.C. Sec. 78y(a)(1). We deny the petition for review.
 
 
 3
 Burkes was employed as a salesperson in the Pleasanton, California office of Shearson Lehman Hutton, Inc. ("SLH") from 1988 to January 31, 1990, when he was fired. On November 16, 1990, the NASD's District Business Conduct Committee No. 2 ("DBCC") issued a complaint charging Burkes with violating Article III, Section 1 of the NASD's Rules of Fair Practice ("Section 1").[1] The DBCC alleged that in 1989 Burkes caused over $17,000 to be credited improperly to his commission account. The DBCC alleged that Burkes was aided by Patricia Rassiga, who at the time was a supervisor in SLH's insurance commission processing unit in New York. The DBCC held a hearing and found that Burkes violated Section 1 by improperly transferring $16,500.54 to his commission account.[2] Burkes was censured, suspended in all capacities for 180 days, and fined $16,200. Burkes appealed to the NASD's National Business Conduct Committee ("NBCC"), which upheld the DBCC's decision.
 
 
 4
 On April 14, 1993, the SEC upheld the NBCC's decision. The SEC found that Burkes had been behind on his yearly sales quota for 1989 and knew that if he failed to make his quota he could be terminated.[3] In addition, Burkes knew his commission payout could be reduced in 1990. Burkes was concerned and suggested to his supervisor that the commission accounting process could be manipulated to enable Burkes to make his quota. Burkes's supervisor rejected this suggestion, and Burkes later assured his supervisor that he would make his quota without any problems. Burkes eventually made his quota by $684.
 
 
 5
 SLH subsequently discovered that nine false entries had been made to Burkes's commission account. These false entries enabled Burkes to make his 1989 sales quota. SLH investigated and determined that Rassiga, who at the time the false entries were made had developed a long-distance romantic relationship with Burkes, was involved. When SLH confronted Rassiga, she admitted making two of the entries at Burkes's request and that Burkes had supplied her with customer names, sales amounts, and other information with which to make the entries. Other evidence indicated that Rassiga knew that Burkes had a sales quota and that she participated in at least five other false entries. Although Burkes testified that he had no knowledge of the false entries, the SEC found that Burkes must have known because the total amount of the false entries constituted almost ten percent of Burkes's yearly sales quota. The SEC thus found that Burkes engaged in unethical conduct in violation of Section 1.
 
 
 6
 "The SEC's findings of fact are conclusive if supported by substantial evidence." Environmental Action, Inc. v. SEC, 895 F.2d 1255, 1259 (9th Cir.1990); see also 15 U.S.C. Sec. 78y(a)(4). "Substantial evidence constitutes more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Eichler v. SEC, 757 F.2d 1066, 1069 (9th Cir.1985) (quotation omitted). "If the evidence is susceptible of more than one rational interpretation, we must uphold the SEC's findings." Id.
 
 
 7
 We have reviewed the testimony and exhibits contained in the record and conclude that this evidence is adequate to support the SEC's findings. Therefore, substantial evidence supports the SEC's decision. See id.
 
 
 8
 We reject Burkes's contention that the SEC's decision is not supported by the evidence because the SEC relied on the testimony of Rassiga, whom Burkes accuses of lying. First, although Rassiga's testimony was of great importance, the SEC did not rely exclusively on that testimony. Other evidence in the record supports the SEC's decision.
 
 
 9
 Second, the SEC noted a conflict between the DBCC's and NBCC's decisions in that the DBCC accepted as credible Rassiga's testimony that she knew of only two false entries while the NBCC found that Rassiga had not been completely honest and that she participated in seven false entries. The SEC therefore limited its consideration of Rassiga's testimony to her admission that she was involved in two false entries. The SEC found, however, that other evidence in the form of vouchers bearing Rassiga's signature and computer access code demonstrated that Rassiga had participated in at least five other false entries. In addition, the SEC found that even if Burkes and Rassiga had only agreed to two false entries, that was sufficient to constitute unethical conduct.
 
 
 10
 The SEC explicitly rejected Burkes's argument that Rassiga lied as to the two entries. The SEC found that Rassiga's testimony was credible because her statements regarding the two false entries were against her interest. In fact, the record contains substantial evidence showing that, based on Rassiga's admissions, SLH reported her to the Manhattan District Attorney's Office and that Rassiga eventually pleaded guilty to a charge of falsifying business records in the second degree, a Class A misdemeanor.[4]
 
 
 11
 We also reject Burkes's attempt to discredit Rassiga based on minor discrepancies between her testimony and other evidence in the record. As the government argues in its brief, Burkes did not bring any specific discrepancies to the attention of either the DBCC, the NBCC, or the SEC. We therefore decline to consider this argument now. See Eichler, 757 F.2d at 1071.
 
 
 12
 Burkes contends the SEC's decision must be overturned because its decision goes beyond the issues presented in the DBCC's complaint. In support of this contention, Burkes argues that the sole charge in the complaint is conspiracy yet he was found guilty as an individual. This contention lacks merit.
 
 
 13
 Burkes's contention is based on the DBCC's statement in paragraph 3 of its complaint that Burkes and Rassiga caused the improper credits to Burkes's commission account "pursuant to an agreement between the two of them." We do not agree with Burkes that the DBCC's statement must be read as alleging solely a conspiracy theory. Burkes's claim is refuted by paragraph 4 of the DBCC's complaint, which charges Burkes simply with engaging in unethical business conduct in violation of Section 1. The DBCC did not charge Burkes and Rassiga with conspiring to violate Section 1. Nor did the DBCC assert that the agreement, by itself, was sufficient to constitute a violation of Section 1. Thus, the SEC did not exceed the scope of the complaint by finding that Burkes alone violated Section 1.
 
 
 14
 Finally, Burkes contends the sanctions imposed upon him were oppressive. The SEC found that the sanctions imposed by the NASD were not excessive or oppressive in light of Burkes's conduct and his unwillingness to take responsibility for his actions. Burkes's only argument in support of his contention is that he could not take responsibility because he had no knowledge of the false entries. As we discussed above, however, substantial evidence supports the SEC's finding that Burkes knew of the false entries to his account. Therefore, because Burkes does not argue that the sanctions otherwise were improper, we conclude that the SEC did not abuse its discretion by upholding the sanctions imposed by the NASD. See Hateley v. SEC, 8 F.3d 653, 655 (9th 1993).
 
 
 15
 PETITION FOR REVIEW DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Section 1 provides that "[a] member, in the conduct of his business, shall observe high standards of commercial honor and just and equitable principles of trade."
 
 
 [2]
 The DBCC also named Rassiga as a respondent in its complaint. The DBCC dismissed the complaint as to Rassiga, however, on the ground she was an insurance commission supervisor and not a person engaged in the investment banking or securities business
 
 
 [3]
 Burkes's quota was $175,000
 
 
 [4]
 SLH also fired Rassiga. There is evidence that after her termination, Burkes broke off their engagement