105 F.3d 665
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Clinton Hugh HOLLAND, Jr., Petitioner,
v.
SECURITIES AND EXCHANGE COMMISSION, Respondent.
 No. 96-70084.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 6, 1996.
Decided Jan. 3, 1997.
 
 Petition for Review of an Order of the Securities and Exchange Commission, SEC No. 3-8603.
 SEC
 REVIEW DENIED.
 Before: CANBY, RYMER, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Clinton Hugh Holland, Jr., a securities broker, seeks review of an order of the Securities and Exchange Commission sustaining a disciplinary action of the National Association of Securities Dealers, Inc. The SEC had jurisdiction under 15 U.S.C. § 78s(d). We have jurisdiction under 15 U.S.C. § 78y(a), and we uphold the Commission's order.
 
 
 3
 * Holland argues that the order is not supported by substantial evidence. See id. § 78y(a)(4). He maintains that he had reasonable grounds for believing that his recommendations to Bradley were suitable, given her stated investment objectives, her needs, and her overall portfolio. He points out that there is no evidence that he engaged in inappropriate margin trading or unauthorized transactions or churning, that Bradley agreed with his investment strategy, and that his record as a broker for more than twenty years was unblemished. Therefore, he submits, his recommendations cannot have been unsuitable, and the SEC's order must rest solely on Bradley's age, or on the fact that he recommended stocks that were underwritten by his brokerage firm--neither of which, he contends, should be a dispositive factor. Holland also argues that he committed no violation of Article III, sections 1 and 2 of NASD's Rules of Fair Practice, because the evidence does not show that he acted in bad faith.
 
 
 4
 * The Exchange Act provides that "[t]he findings of the Commission as to the facts, if supported by substantial evidence, are conclusive." 15 U.S.C. § 78y(a)(4); Rutherford v. SEC, 842 F.2d 214, 215 (9th Cir.1988). If the evidence is susceptible of more than one rational interpretation, we must uphold the Commission's findings. Davy v. SEC, 792 F.2d 1418, 1421 (9th cir. 1986). The Commission's conclusions of law are to be set aside only if arbitrary, capricious, or otherwise not in accordance with law. Rutherford, 842 F.2d at 215. We review the SEC's affirmance of the NASD's imposition of sanctions for abuse of discretion, and will not disturb those sanctions "unless they are either unwarranted in law or without justification in fact." Cater v. SEC, 726 F.2d 472, 474 (9th Cir.1983) (quoting Hinkle Northwest, Inc. v. SEC, 641 F.2d 1304, 1310 (9th cir. 1981)).
 
 B
 
 5
 Holland argues that only a portion of Bradley's $400,000 in assets was invested in speculative stocks and that investment of a limited portion of a customer's known net worth in high risk growth stocks is not per se unsuitable. In addition, he points out, Bradley wanted to invest a portion of her account in speculative securities, and she kept abreast of her account activity through monthly statements, confirmations, prospectuses, and regular meetings with Holland. For these reasons, Holland contends that the SEC's order must be reversed unless age or gender by itself can justify imposition of disciplinary sanctions.
 
 
 6
 Neither the record as a whole nor the Commission's order itself reflects an undue or exclusive focus on the client's age (and none on her gender). Rather, the Commission legitimately regarded the investor's age as an important factor in assessing the risk and near-term volatility of her investments. But the Commission also found, and there was ample evidence to support a finding, that highly risky and speculative investments did not suit the client's financial situation given that she had no insurance or family to care for her, had a limited prospect of future income, and had a goal of bequeathing endowments to charities. There also was evidence that despite her business experience, Bradley relied heavily on Holland's investment advice.
 
 
 7
 Nor did the Commission hold that it was a per se violation for an account executive to recommend securities that had been underwritten by his firm, or base its decision only on this fact. Instead, the Commission noted that Paulson was an underwriter for most of the securities at issue and considered this fact, along with the high risk nature of several of the securities Holland recommended--even though Bradley had never selected "high risk" as a risk factor for her account--in concluding that the concentration of high risk and speculative securities was unsuitable.
 
 
 8
 Whether substantial evidence supports the Commission's finding that Holland recommended an inappropriately balanced portfolio is a harder question. There was evidence that investment in speculative securities amounted to 25 percent of Bradley's net worth (a more relevant figure than what proportion of her investments in her stock trading account alone were speculative), and that Bradley agreed to this allocation. The client had income from a land sale contract and held a large part of her assets in Treasury bills and cash.
 
 
 9
 However, we cannot say that the Commission's take on the evidence as a whole is not a rational interpretation. Although Bradley checked her new account form for "good quality" and "speculative," she did not check "high risk"--yet a number of the securities Holland recommended were characterized in the prospectus as high risk (and five warned in the offering documents that the securities were suitable only for those who could afford to lose their entire investment). Thus, the SEC could fairly conclude that Holland recommended an unsuitable concentration of high risk and speculative securities in light of Bradley's dependence on him.
 
 
 10
 Finally, Holland suggests that he cannot have violated the Rules of Fair Practice because, as the NASD found and the SEC acknowledged, he acted in good faith. However, "[a]n NASD violation does not require that the dealer act with scienter." Erdos v. SEC, 742 F.2d 507, 508 (9th Cir.1984).
 
 
 11
 In sum, there is "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion" that Holland violated Article III, sections 1 and 2 of the Rules. See Eichler v. SEC, 757 F.2d 1066, 1069 (9th Cir.1985).
 
 II
 
 12
 Holland also argues that the Commission abused its discretion by sustaining an unreasonably harsh penalty. Assuming Holland did not waive this argument by failing to include it among the issues presented for review, F.R.A.P. 28(a)(3), we disagree. The record indicates that a $5,000 fine, a five-day suspension from dealing, and a requirement that Holland requalify as a registered principal are relatively lenient sanctions under the NASD guidelines.
 
 
 13
 PETITION DENIED.
 
 KLEINFELD, Circuit Judge, dissenting:
 
 14
 I am tempted to join our disposition because of our limited scope of review. 15 U.S.C. § 78y(a)(4); Rutherford v. SEC, 842 F.2d 214, 215 (9th Cir.1988). But a limited scope of review is not the same as no review. I am unable to identify substantial evidence allowing for a rational conclusion that Mr. Holland violated the rule. The NASD Rules of Fair Practice in effect at the time he made his recommendations required him, in recommending securities purchases to Ms. Bradley, to have "reasonable grounds for believing that the recommendation is suitable" based on what he knew of her "financial situation and needs." Holland had reasonable grounds for such a belief.
 
 
 15
 Ms. Bradley's financial situation was that she had plenty of money to cover her minimal needs, about $200,000 and an annual income of about $41,000. She told Mr. Holland's firm that she wanted to make some "speculative" investments. Though she did not check the "high risk" box on the form, just the "speculative" box, I cannot see a difference, nor did the SEC suggest one.
 
 
 16
 Mr. Holland moved Ms. Bradley to some extent from junk bonds into junk equities, with a greater risk of loss and a greater possibility of big gains. The numbers are not entirely clear, but it appears that about 25% of her net worth was put into the speculative securities. Some of the investments seemed large for high risk ventures, and some were in securities underwritten by Mr. Holland's firm. On the other hand, there was plenty of diversification, eleven issues by the SEC's count, to offset the size of some of the investments.
 
 
 17
 I cannot make sense of the SEC's reasons for why the investments were not suitable considering Ms. Bradley's financial situation and needs. The SEC expresses concern that she "did not appear to have Medicare supplemental health insurance, and had no family to care for her," but to my mind, the uncontradicted evidence that Ms. Bradley was an active Christian Scientist takes away any force of the argument that she needed to save money to purchase medical care.
 
 
 18
 The SEC also says Ms. Bradley had "a limited prospect of future income," but noted that her new account statement showed an annual income "in excess of $41,000." Because she was already 82, and had an income entirely adequate to live on, Ms. Bradley did not need to increase or preserve her capital for her old age. She was also in a better position to risk her capital than a younger person would have been, other things being equal, because she did not need to be as concerned as a younger person about unforeseeable risks that the future might hold.
 
 
 19
 The SEC points out that Ms. Bradley wanted to leave "as much as possible" to her church and charity, and concludes that the speculative investments were "inconsistent with this objective." I do not see why. The only conceivable way Ms. Bradley's estate could be turned into a much larger amount was by aggressive speculation.
 
 
 20
 To my mind, it is critical that the SEC accepts the NASD finding the "Holland acted in good faith and did not receive more than the normal commissions for these transactions." This is virtually a finding that Holland had "reasonable grounds for believing the recommendation[s] [were] suitable" given the circumstances of this case. Absent this finding, the recommendations would naturally arouse the suspicion that Mr. Holland was churning Ms. Bradley's account or switching her into unattractive securities underwritten by his own firm to raise his commission income beyond what it would have been had his recommendations been appropriate. The investments, though "suitable" if recommended honestly for the client's benefit, would be unsuitable if recommended to pad commissions or fulfill sales quotas at the expense of the customer. But evidently that was not so.
 
 
 21
 The majority cites Erdos v. SEC, 742 F.2d 507 (9th Cir.1984) for the proposition that "[a]n NASD violation does not require that the dealer act with scienter." The holding of Erdos is not that broad. Erdos is a churning case. The broker in Erdos said he did not know the customer's age or financial situation, but we held that illegal churning did not require that he have that knowledge. It has no application to this case.
 
 
 22
 Mr. Holland had as his customer an elderly lady in full command of her faculties, with money she could afford to lose, who wanted to speculate. Speculation with about a quarter of her net worth made sense in terms of her investment objective of maximizing what she left to her church and charities. I do not see a substantial basis on the whole record for concluding that Mr. Holland lacked "reasonable grounds for believing that the recommendation is suitable" based on what he knew of her "financial situation and needs."
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3