N.R. SMITH, Circuit Judge,
concurring in part and dissenting in part:
Because the majority resolves this case on grounds not raised by the parties and not supported by the record, I must dissent. That said, the majority correctly concludes that the Securities and Exchange Commission’s interpretation of Securities Exchange Act Section 19(d)(2) — that the Commission’s review authority under that section is limited to final disciplinary sanctions that remain “live” — is entitled to Chevron deference.[1] However, the majority thereafter speculates as to the nature of costs assessed against Sharemaster in order to invent a live sanction and preserve the Commission’s review authority. It is that part of the decision I cannot join.
I.
Sharemaster sought the Commission’s review of a Financial Industry Regulatory Authority (FINRA) order suspending it from FINRA membership for failure to file a compliant annual financial report. Under the Commission’s interpretation of Section 19(d)(2), its review of the FINRA order was limited to final disciplinary sanctions that remained live. The only disci *1072 plinary sanction described in the FINRA order was a suspension. After concluding that Sharemaster was in violation of the Exchange Act, the FINRA order states— “Accordingly, Sharemaster is suspended until it files a[ ] [compliant annual report].” The FINRA order did not separately impose any fines on Sharemaster. Indeed, the word “fine” is not used anywhere in the FINRA order. Sharemaster subsequently opted to comply with the FINRA order by filing a compliant annual report, and FINRA lifted the suspension. Therefore, the only sanction imposed by the FINRA order was no longer live and, applying the Commission’s interpretation of Section 19(d)(2), the Commission is without jurisdiction. Case closed.
But no: Determined to find a live sanction, the majority invents one. The majority notes that the FINRA order also required Sharemaster to pay hearing costs. The majority speculates that the $1,785 ordered by FINRA included “a $1,000 penalty.” Maj. Op. 1064. It then concludes that this “penalty” (which it also labels as a “fine”) amounts to a live sanction that preserves the Commission’s jurisdiction to review the FINRA order. Maj. Op. 1068-70. Without persuasive argument by the parties on this second issue (thus, left only to speculation), the majority presses on to address and decide it, sua sponte adopting a position neither raised before us by the parties nor supported by the record.
II.
A.
As an initial point, Sharemaster clearly did not raise the issue on which the majority rests its decision. The only sanction referred to by Sharemaster (or FINRA or the Commission) was the suspension. It is undisputed that Sharemaster did not argue (in either its opening or reply brief)[2] that FINRA sanctioned it with a $1,000 fine. Even in the face of persistent, leading prompts from the majority at oral argument, Sharemaster did not pursue this position. Our precedent is well established regarding such circumstances. “[0]n appeal, arguments not raised by a party in its opening brief are deemed waived.” Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999). This waiver rule — which the majority acknowledges applies to pro se litigants, such as Sharemaster, just as it applies to parties represented by counsel, Maj. Op. 1070 — should have ended our inquiry. See Wilcox v. Comm’r of Internal Revenue, 848 F.2d 1007, 1008 n.2 (9th Cir. 1988). The majority essentially admitted as much when, in response to the Commission’s waiver arguments at oral argument, the majority acknowledged that the Commission was in a difficult position, because, if Sharemaster “were not pro se, we would be holding [it] quite strictly to th[ose] kinds of waiver rules.”
However, the majority was undeterred. Though the issue seemed to be waived, the majority resurrected it by ordering supplemental briefing, saving Sharemaster from an adverse ruling on the issue of waiver. See United States v. Salman, 792 F.3d 1087, 1090 (9th Cir. 2015), cert. granted in part, — U.S. -, 136 S.Ct. 899, 193 L.Ed.2d 788 (2016), and aff'd, — U.S. -, 137 S.Ct. 420, 196 L.Ed.2d 351 (2016); United States v. Ullah, 976 F.2d *1073 509, 514 (9th Cir. 1992). Disappointing to the majority, the additional briefing did not provide any persuasive arguments to strengthen the majority’s conclusion as to the merits.
B.
We owe deference to the Commission’s finding that no part of the $1,785 FINRA-imposed costs was a sanction. “If the evidence is open to more than one interpretation, we must uphold the Commission’s findings.” Alderman v. S.E.C., 104 F.3d 285, 288 (9th Cir. 1997). The Commission’s findings are conclusive, if supported by substantial evidence. 15 U.S.C. § 78y(a)(4); Davy v. S.E.C., 792 F.2d 1418, 1421 (9th Cir. 1986). “Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Davy, 792 F.2d at 1421 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)) (quotation marks omitted). In reviewing the Commission’s order to determine if its findings are supported by substantial evidence, we must “examine the [record] evidence with a ‘deferential eye.’ ” Ponce v. S.E.C., 345 F.3d 722, 728 (9th Cir. 2003) (quoting Alderman, 104 F.3d at 288).
As noted, the only sanction the FINRA order imposed was Sharemaster’s suspension. The order described the $1,785 charge as a “cost.” And nowhere did the FINRA order describe any portion of this amount as a “fine,” “late fee,” “penalty,” or “sanction.” The only reference in the record to the possibility of any financial penalty is found in a single footnote in the Commission’s order dismissing the proceedings below. This footnote explained that (1) Sharemaster contended (in the proceedings before the Commission) that “FINRA assessed and received payment of a $1,000 fine against Sharemaster;” and (2) the only support Sharemaster provided for this argument was an unspecified document, listing a $1,000 “late fee” against Sharemaster. However, noting that Share-master failed to explain the relevance of its cited document, the Commission indicated that there was insufficient evidence in the record to support this argument. Instead, it rejected Sharemaster’s position and found that the $1,000 charge reflected in the document “appears to be another example of costs.”
The FINRA order provided that Share-master was “ordered to pay costs of $1,785.00, which includefd] an administrative fee of $750.00 and the cost of the hearing transcript.” By identifying only two items that make up the hearing costs (an administrative fee and a transcript cost) and expressly stating that the administrative fee was $750, the plain language of the order leaves no room for argument that the balance of the hearing costs ($1,035) was attributable to anything but the cost of the transcript.
Examining the record with a deferential eye, as we are required to do, there is clearly substantial evidence to support the Commission’s finding that no part of the $1,785 in costs was a sanction. Therefore, the finding that FINRA did not impose any penalty other than the suspension is conclusive, and we should give it deference.
Relying solely on the single reference in the Commission’s order to a $1,000 late fee, the majority speculates that the $1,785 in costs ordered by FINRA consisted of a $750 hearing cost, a $1,000 “penalty” or “late fee,” and a $35 hearing-transcript cost. Maj. Op. 1068-69. Despite the majority’s false bravado that the FINRA order “plainly” imposed a $1,000 penalty on Sharemaster, Maj. Op. 1068-69, this conclusion is not supported by the record. The majority claims that the Commission has described some portion of the $1,785 costs as a “late fee.” This is incorrect. The Commission’s order below does no more than *1074 note that Sharemaster cited to a document listing a $1,000 late fee.[3] Here on appeal, Sharemaster failed to provide this mystery document, to explain its relevance, or even to refer to it. Thus, compared to the Commission, we find ourselves at a disadvantage to ascertain the nature of the supposed $1,000 charge. We do not know whether this charge should be categorized as a fíne. We do not know whether this $1,000 was part of the $1,785 costs imposed by FINRA or whether the $1,000 was ever paid. Further, if this charge were a late fee, we do not know why the late fee was assessed. We should, then, give deference to the Commission’s finding that the $1,785 in costs did not include any type of penalty, because that finding is supported by substantial evidence.
In addition, if the cost of the transcript were anything other than $35, the majority’s breakdown of the costs and its argument that FINRA imposed a $1,000 fine cannot be correct. The majority’s “presumption” that the “cost of the hearing transcript” was $35 has - no basis in the record. That figure is entirely absent from the record and briefing, and there is no evidence to support the conclusion that the transcript could have cost so little. The record does not reveal the precise length of the transcript; however, citations in the record establish that the transcript was, at a minimum, 148 pages. That quantity, at the cost presumed by the majority, would come out to just over $00.04 per page. While those involved in appealing this order may wish they could order transcripts at such a price, there is no basis to support it. For example, FINRA’s website lists the transcript cost for hearings in one of its offices as $4.50 per page. Dispute Resolution Regional Offices and Hearing Locations, finra.org, http://www.finra.org/ arbitration-and-mediation/southeast-regional-office-guide (last visited January 4, 2017). Our own court authorizes a rate of $3.65 per page.[4] 28 U.S.C. § 753(f) (providing that the United States Judicial Conference limits the transcript rates federal courts may charge); Federal Court Reporting Program, Maximum Transcript Rates, http://www.uscourts.gov/services-forms/ federal-court-reporting-program (last visited January 4, 2017) (providing transcript rate limits); Ninth Cir. R. 10-3.1(e) (incorporating rates established by United States Judicial Conference). Unless the hearing transcript were only eight to ten pages (which is far from true), a necessary premise to the majority’s argument (that the transcript cost was $35) simply fails. Considering a realistic cost of the transcript, the majority’s position cannot be reconciled with the record.
This conclusion is bolstered by reviewing decisions from other disciplinary actions in which FINRA ordered the respondent to pay hearing costs and expressly stated that the balance of the hearing costs (after the administrative fee) made up the transcript costs. See Denise M. Olson, Disciplinary Proceeding No. 2010023349601, 2013 WL 2146648, at *6 (FINRA Hearing Panel Jan. 4, 2013) (imposing “cost's in the amount of $1909.71, which includes an administrative fee of $750 and hearing transcript costs of $1,159.71”); Dame Cisse, Disciplinary Proceeding No. *1075 2009019297801, 2012 WL 1906576, at *6 (FINRA Hearing Panel Apr. 2, 2012) (“costs in the amount of $1659.15, which includes an administrative fee of $750 and hearing transcript costs of $909.15”); Howard Brajf, Disciplinary Proceeding No. 2007011937001, 2010 WL 5129561, at *5 (FINRA Hearing Panel May 19, 2010) (“costs in the amount of $1,856.80, which includes an administrative fee of $750 and hearing transcript costs of $1,106.80”); Richard A. Neaton, Disciplinary Proceeding No. 2007009082902, 2009 WL 2777331, at *8 (FINRA Hearing Panel June 5, 2009) (“assessed costs in the total amount of $1861.30, consisting of a $750 administrative fee and an $1111.30 transcript fee”); CMG Institutional Trading, LLC, Disciplinary Proceeding No. 2006006890801, 2008 WL 5385253, at *13 (FINRA Hearing Panel Oct. 14, 2008) (assessed hearing costs of “$2,573.44, consisting of a $750 administrative fee and a $1,823.44 transcript fee”); Avidan Danny Fishman, Disciplinary Proceeding No. 2007008812801, 2008 WL 5385255, at *7 (FINRA Hearing Panel Sept. 18, 2008) (“ordered to pay Hearing costs of $2,057.13, which includes a $750 administrative fee and a $1,307.13 transcript fee”); John M. E. Saad, Disciplinary Proceeding No. 2006006705601, 2008 WL 5385256, at *5 (FINRA Hearing Panel Aug. 19, 2008) (“assessed Hearing costs in the total amount of $2,080, consisting of a $750 administrative fee and a $1,330 transcript fee”).
Reviewing the record with a deferential eye, as we are required to do, there is clearly substantial evidence to support the Commission’s finding that no part of the $1,785 in costs was a sanction.
III.
Judges are not advocates. Thus, when an aggrieved party seeks review from our court, we require the party to “specifically and distinctly” explain what issues require our review. Miller v. Fairchild Indus., Inc., 797 F.2d 727, 738 (9th Cir. 1986). The majority’s opinion ignores this fundamental policy and, instead, attempts to save Sharemaster’s case by basing its decision on an issue Sharemaster did not raise. The record before this court cannot justify granting Sharemaster’s petition, and this case should be closed.

. Thus, I concur in Part II.A of the majority opinion.

. In its answering brief, the Commission pointed out that Sharemaster’s opening brief did not argue that FINRA’s imposition of costs preserved the Commission's review jurisdiction. Put on notice that this argument was absent, Sharemaster still did not attempt to belatedly raise it in its reply brief.
In an exchange that highlights the majority’s sua sponte approach to deciding this case, Sharemaster never attempted to argue that FINRA had sanctioned it by imposing a fine until, at oral argument, this panel explained such argument to Sharemaster and asked, “you’re not waiving that, are you?"

. The only reference the Commission made in its appellate briefing to a "late fee" was (1) to cite the footnote in which the Commission below rejected Sharemaster's late-fee argument and (2) to argue that Sharemaster waived this argument by failing to raise it on appeal. The Commission's use of the term "late fee” in its briefing was clearly only a reference to the argument Sharemaster made below and not a concession that Sharemaster was actually charged a late fee.

. In fact, our court actually authorizes rates ranging up to $7.25 per page for expedited orders.